# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LANTHA OWENS,** } } | |
| **Plaintiff,** } } | |
| v. } } | **Case No.: 4:20-cv-01635-ACA** |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** } } } } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Lantha Owens appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Owens applied for a period of disability, disability insurance benefits, and supplemental security income on July 28, 2014, alleging that her disability began on July 3, 2014. (R. at 91–92, 194–204). The Commissioner initially denied Ms. Owens's claim (*id.* at 127–135), and Ms. Owens requested a hearing before an

Administrative Law Judge ("ALJ") (*id.* at 61–79). After holding a hearing (*id.* at 61-79), the ALJ originally assigned to the case issued an unfavorable decision (*id.* at 40–60). The Appeals Council denied Ms. Owens's request for review (r. at 1–6), and this court (Coogler, J.) affirmed the Commissioner's decision (*id.* at 913–942). Ms. Owens appealed to the Eleventh Circuit Court of Appeals. (R. at 943). On appeal, the Eleventh Circuit granted the Commissioner's unopposed motion to remand and remanded the case to the Commissioner for further proceedings at the hearing level. (*Id.* at 992–996).

On remand, the ALJ held a hearing (*id.* at 817–844) and issued an unfavorable decision (r. at 651–679). Ms. Owens filed written exceptions to the ALJ's decision. (*Id.* at 681–700). The Appeals Council considered Ms. Owens' written exceptions but found no reason to assume jurisdiction (*id.* at 642–716), making the ALJ's decision final and ripe for the court's review, 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Owens had not engaged in substantial gainful activity since her alleged onset date of July 3, 2014. (R. at 656). The ALJ found that Ms. Owens' mood disorder, degenerative disc disease, status post anterior cervical discectomy and fusion at C6-C7, bipolar disorder, depression, anxiety, cannabis abuse, and nicotine dependence were severe impairments but that her carpal tunnel syndrome, gout, baker's cyst, and hypertension were non-severe impairments. (*Id.* at 656–657). The ALJ then concluded that Ms. Owens does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 657).

After considering the evidence of record, the ALJ determined that Ms. Owens had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with a number of additional limitations (R. at 658–659). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Owens can perform her past relevant work as a garment sorter. (*Id.* at 666–667). The ALJ also found that other jobs exist in significant numbers in the national economy that Ms. Owens can perform, including merchandise marker, housekeeping cleaner, and photocopy machine operator. (*Id.*

4

at 668). Accordingly, the ALJ determined that Ms. Owens has not been under a disability, as defined in the Social Security Act, from her alleged onset date of July 3, 2014 through the date of the decision. (R. at 668).

## IV. DISCUSSION

Ms. Owens argues that the court should reverse the Commissioner's decision because: (1) the ALJ did not properly evaluate the opinion of examining psychologist Dr. David Wilson and (2) she meets Listing 12.04 and Listing 12.06. (Doc. 14 at 3–29).[1]

### 1. Dr. Wilson's Opinion

Ms. Owens' first argument is that the ALJ did not properly evaluate the opinion of consultative examiner, Dr. David Wilson. (Doc. 14 at 10–14).

Dr. Wilson performed a psychological evaluation of Ms. Owens on June 13, 2016. (R. at 1360–1365). During the examination, Ms. Owens counted down from twenty with no errors, and she performed serial 3's to twenty-four. (*Id.* at 1364).

---

[1] Ms. Owens' brief contains a third heading in her statement of issues which claims that the ALJ's decision was not based on substantial evidence. (Doc. 14 at 3). But Ms. Owens offers no additional argument or discussion on that issue. (*See generally* docs. 14, 16). This sort of perfunctory identification of issues gives neither the Commissioner nor the court any guidance about Ms. Owens' argument aside from the fact that she asserts the existence of an error. Therefore, the court will not address it. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

5

She counted backwards from 100 by 7's to ninety-three, and when Dr. Wilson stopped her, she responded that "it would take me all day." (*Id.*). Ms. Owens did simple and more complex mathematical calculations, and she had good mental control and attention. (R. at 1364). Ms. Owens recalled one of three items after ten minutes, five digits forward, and four digits backwards. (*Id.*). She had problems with short term and working memory. (*Id.*).

Ms. Owens had "very poor acquired information" and difficulty retrieving information. (R. at 1364). She also had slightly below abstract reasoning. (*Id.*). Dr. Wilson administered the Bipolar Depression Rating Scale, and Ms. Owens' responses were indicative of serious problems with her mood. (*Id.*). Dr. Wilson explained that Ms. Owens is "often depressed and has sleep and appetite disturbance." (R. at 1364). He also noted that Ms. Owens has "reduced social engagement and energy and motivation" and "impaired concentration and short term memory." (*Id.*). Dr. Wilson stated that Ms. Owens has "significant anxiety," and he found evidence of affective flattening, anhedonia, and restriction of activity. (*Id.*). In addition, he explained that Ms. Owens has thoughts and feelings of worthlessness and helplessness or hopelessness and that she has had frequent psychotic symptoms. (R. at 1364).

Dr. Wilson summarized his findings by explaining that Ms. Owens presented with signs and symptoms of bipolar disorder and that she frequently has extreme

paranoia which had "been better recently." (*Id.*). Still, Dr. Wilson noted that Ms. Owens has significant irritability and "a great deal of difficulty being around people." (*Id.*). Dr. Wilson stated that Ms. Owens would have difficulty maintaining any type of job because her ability to withstand the pressures of day to day occupational functioning is highly impaired. (R. at 1364).

Dr. Wilson also completed a mental health source statement in which he opined that Ms. Owens could understand, remember and carry out short and simple instructions, but that she could not maintain attention, concentration and/or pace for periods of least two hours; perform activities within a schedule and be punctual within customary tolerances; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors; interact with co-workers; or adhere to basic standards of neatness and cleanliness. (R. at 1366). Dr. Wilson also opined that Ms. Owens would be off-task 50% of the time in an 8-hour day. (*Id.*). Dr. Wilson stated that Ms. Owens limitations had existed since July 3, 2014, and he opined that her mental conditions would not improve. (*Id.*).

After reviewing Dr. Wilson's examination notes and mental health source statement in detail (*see* r. at 662–663), the ALJ gave Dr. Wilson's opinion "little weight in its entirety" because according to the ALJ, the opinion "is not consistent with or supported by the evidence" or Dr. Wilson's own findings (*id.* at 663). The

ALJ stated that the evidence did not demonstrate that Ms. Owens was as limited as Dr. Wilson suggested, in part because Ms. Owens had not had recent mania episodes. (*Id.*). The ALJ noted that "the overall evidence" indicated that Ms. Owens was stable when she was on medication and that Dr. Wilson's opinion that Ms. Owens' condition would not improve was inconsistent with evidence showing that she consistently improved and responded well to medication and both inpatient and outpatient treatment. (R. at 663). The ALJ stated that Dr. Wilson's opinion that Ms. Owens could not adhere to basic standards of neatness and cleanliness was inconsistent with another physician's notes that Ms. Owens appeared well groomed for visits with that doctor in 2014 and 2017 and Dr. Wilson's own examination note that Ms. Owens presented with neat hygiene and appearance. (*Id.*).

With respect to Dr. Wilson's opinion that Ms. Owens would not be able to perform activities within a schedule or be punctual, the ALJ explained that Dr. Wilson noted that Ms. Owens was on time for her appointment with him. (*Id.*). The ALJ acknowledged that Ms. Owens has some social limitations, but she stated that Dr. Wilson's opinion that Ms. Owens could not interact with supervisors was not entirely consistent with other evidence that Ms. Owens is social with family, goes shopping, goes to church, and uses Facebook. (R. at 663). The ALJ also acknowledged that Ms. Owens has some limitations in the areas of concentration, persistence, and pace and in the ability to adjust to changes in a work environment,

8

but the ALJ found that Dr. Wilson's limitations in those areas were not consistent with the findings contained in his mental examination. (*Id.*). For example, the ALJ noted that the results of Ms. Owens' Bipolar Depression Rating Scale indicated only impaired concentration and short-term memory, not total inability to concentrate. (*Id.*). The ALJ also noted that Ms. Owens could count down from twenty with no errors; she permed serial 3's to twenty-four; she performed simple and complex math calculations; she counted backwards from 100 by 7's to nine-three and only stopped because she commented finishing the exercise would take too long; and she had good recall. (R. at 663). Finally, the ALJ found that neither Dr. Wilson's examination findings nor the overall evidence of record supported Dr. Wilson's opinion that Ms. Owens would be off task 50% of an 8-hour day. (*Id.*).

Ms. Owens does not specifically challenge the ALJ's stated reasons for assigning little weight to Dr. Wilson opinion. (*See* Doc. 14 at 10–14). Rather, citing *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015), Ms. Owens argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 14 at 12). But the ALJ's detailed, specific explanation for rejecting Dr.

Wilson's opinion (*see* r. at 663–664) belies Ms. Owens' position. Therefore, this argument is not persuasive.

Ms. Owens also appears to argue that the ALJ substituted her opinion for that of Dr. Wilson (Doc. 14 at 13–14). Ms. Owens cites a number of cases that stand for this general proposition, but she advances no specific argument regarding how the ALJ did so in this case. (*See id.*). Nevertheless, although an ALJ may not make medical findings, it is the ALJ's responsibility to resolve conflicts between medical opinions based on evidence in the record. *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). And that is what the ALJ did here.

2.  Listings 12.04 and 12.06

Ms. Owens' second argument is that the evidence supports a finding of disability because she meets Listings 12.04 and 12.06.[2] (Doc. 14 at 14–29). A claimant bears the burden of proving that she meets a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports

---

[2] Listings 12.04 and 12.06 concern mental disorders. The substance of the Listings has changed slightly since Ms. Owens filed her claims. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06 (effective February 26, 2014 to December 8, 2014) *with* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06 (effective December 13, 2021). Ms. Owens relies on the version of the Listings in effect when she filed her claims in July 2014 (*see* doc. 14 at 15–18), and the Commissioner does not challenge her position in this regard (*see* doc. 15 at 14–18). Therefore, the court assumes that that the Listings in effect when Ms. Owens filed her claims control and the court's references to the Listings below are to the version in effect between February 26, 2014 to December 8, 2014.

documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (quotation marks omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.04 concerns affective disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. For purposes of the Listing, "[m]ood refers to a prolonged emotion that colors the whole psychic life" and "it generally involves either depression or elation." *Id.* To meet the Listing, a claimant must satisfy the requirements of both paragraphs A and B or the requirements of paragraph C.

Paragraph A requires:

Medically documented persistence, either continuous or intermittent, of one of the following:

> 1. Depressive syndrome characterized by at least four of the following:
>
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>> b. Appetite disturbance with change in weight; or
>> c. Sleep disturbance; or
>> d. Psychomotor agitation or retardation; or
>> e. Decreased energy; or
>> f. Feelings of guilt or worthlessness; or
>> g. Difficulty concentrating or thinking; or
>> h. Thoughts of suicide; or
>> i. Hallucinations, delusions, or paranoid thinking; or

11

> 2. Manic syndrome characterized by at least three of the following:
>
>> a. Hyperactivity; or
>> b. Pressure of speech; or
>> c. Flight of ideas; or
>> d. Inflated self-esteem; or
>> e. Decreased need for sleep; or
>> f. Easy distractibility; or
>> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>> h. Hallucinations, delusions or paranoid thinking; or
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(A).

Paragraph B requires that one of the conditions in paragraph A result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *Id.* at § 12.04(B).

Paragraph C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

12

>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* at § 12.04(C).

Listing 12.06 concerns anxiety related disorders. For purposes of this Listing, "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. To meet Listing 12.06, a claimant must satisfy the requirements of both paragraphs A and B or both paragraphs A and C.

Paragraph A requires:

Medically documented findings of at least one of the following:

> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
>> a. Motor tension; or
>> b. Autonomic hyperactivity; or
>> c. Apprehensive expectation; or
>> d. Vigilance and scanning; or

> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(A).

Paragraph B requires that one of the conditions in Paragraph A result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *Id.* at § 12.06(B).

Paragraph C requires that one of the conditions in Paragraph A result "in complete inability to function independently outside the area of one's home." *Id.* at § 12.06(C).

In her decision, the ALJ recognized that Ms. Owens suffers from the severe impairments of mood disorder, bipolar disorder, depression, and anxiety. (R. at 656–657). However, the ALJ explained that these impairments do not meet or equal Listing 12.04 or Listing 12.06. (*Id.* at 657–658). The ALJ specifically considered

the Paragraph B criteria for both Listings and found that Ms. Owens had only moderate limitations in each of the four areas. (*Id.*).

Ms. Owens makes no specific challenge to the ALJ's finding that she does not meet Listing 12.04 or Listing 12.06, nor does she challenge the ALJ's thorough explanation (*see* r. at 657–658) of why she does not meet the Paragraph B criteria for either Listing. Instead, Ms. Owens' brief contains a summary of medical records that she claims demonstrate that she meets the Listings. (Doc. 14 at 18–28). But Ms. Owens neither identifies which requirements of the Listings are at issue nor explains how these medical records show that she meets the criteria in the Listings. In fact, Ms. Owens has done little other than allege the existence of error. To the extent she invites the court to re-weigh the evidence or substitute its judgment for that of the ALJ, the court does not have the authority to accept the invitation, even if the evidence preponderates against the ALJ's finding. *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59.

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Owens' applications for a period of disability, disability insurance benefits, and supplemental security income, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this January 31, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE